```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
TIG INSURANCE COMPANY,                                      :
                                                            :
                            Plaintiff,                      :
                                                            :
            v.                                              :       18-CV-10183 (VSB)
                                                            :
AMERICAN HOME ASSURANCE                                     :       OPINION & ORDER
COMPANY, GRANITE STATE                                      :
INSURANCE COMPANY, and NEW                                  :
HAMPSHIRE INSURANCE COMPANY,                                :
                                                            :
                            Defendants.                     :
                                                            :
------------------------------------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 2/7/2020

Appearances:

Harry P. Cohen
Crowell & Moring LLP
New York, New York
*Counsel for Plaintiff*

Bryce Leigh Friedman
Simpson Thacher & Bartlett LLP
New York, New York
*Counsel for Defendants*

VERNON S. BRODERICK, United States District Judge:

  Before me is Defendants American Home Assurance Company ("American Home"), Granite State Insurance Company ("Granite State"), and New Hampshire Insurance Company's ("NHIC," and together with Granite State and American Home, "Defendants") motion to compel arbitration and to dismiss the claims against Granite State. Because I find that the parties entered into a valid and broad arbitration clause covering the scope of the disputes raised by this litigation, Defendants' motion to compel arbitration is granted. However, Defendants' motion to dismiss the action as it relates to Granite State is denied and the proceeding will instead be

stayed pending arbitration. Accordingly, Defendants' motion is GRANTED IN PART and DENIED IN PART.

## I. Factual Background

Plaintiff, formerly known as Transamerica Insurance Company and as successor by merger to Clearwater Insurance Company ("TIG"), entered into two reinsurance agreements (the "Treaties") with Defendants American Home and NHIC (among other AIG companies) in 1974 and 1976, respectively. (Defs.' Mem. 5–6; Decl. Exs. A, B.)[1] The Treaties contain identical arbitration clauses which require that "[a]ll disputes or differences arising out of this Agreement shall be submitted to the decision of two arbitrators, one to be chosen by each party and in the event of the arbitrators failing to agree, to the decision of an umpire to be chosen by the arbitrators." (Decl. Exs. A, B.)

Defendant Granite State is an insurance company that issued policies to Foster Wheeler Corporation ("Foster Wheeler"), Crane Company ("Crane") and Transamerica Corporation ("Transamerica"). (Compl. ¶ 19).[2] These policies were reinsured by Defendants. Defendant Granite State did not sign and is not a party to the Treaties. (Compl. ¶ 15).

On July 13, 2018, certain Defendants sent three arbitration demands to Plaintiff in accordance with the requirements of the arbitration clauses. (Defs.' Mem. 6, Decl. Exs. C, D, E.) The first demand was made by American Home and NHIC with the underlying liability listed as "Crane Company asbestos-related billings." The second demand was made by American Home Group, American Home, and NHIC, with the underlying liability listed as "Foster Wheeler

---

[1] "Defs.' Mem." refers to Defendants' Memorandum of Law in Support of Defendants' Motion to Compel Arbitration And to Dismiss, filed January 3, 2019. (Doc. 17.) "Decl." refers to the Declaration of Isaac Rethy in Support of Defendants' Motion To Compel Arbitration And To Dismiss, filed on January 3, 2019. (Doc. 18.)

[2] "Compl." refers to Plaintiff's Complaint filed on November 1, 2018. (Doc. 1).

2

billings." The third demand was made by American Home Group, NHIC, National Union, and AIU Insurance Company, with the underlying liability listed as "Transamerica asbestos-related billings." (Defs.' Mem. 6, Decl. Exs. C, D, E.)

By letters dated August 27, 2018, in accordance with the arbitration clause contained in the Treaties, TIG appointed an arbitrator. (Decl. Exs. F, G, H.) In response to the second and third demand letters, TIG asserted, among other things, that it reserved "all rights in connection with this matter, including, without limitation, the right to challenge arbitrability and/or to object to any relief requested in the arbitration by AIG which exceeds the authority of the arbitration panel under the reinsurance agreement or otherwise."[3] (Decl. Exs. G, H.) After each party appointed an arbitrator in accordance with the Treaties' arbitration clauses, but before selecting a third umpire, TIG objected to arbitration, explaining that Granite State was not a party to the arbitration agreements, (Decl. Exs. I, K), and filed this suit to resolve the dispute, (Decl. Ex. L).

## II. Procedural History

Plaintiff filed this action on November 1, 2018. (Doc. 1). On January 3, 2019, Defendants filed a motion to compel arbitration and dismiss the complaint, (Doc. 16), as well as a memorandum of law, (Doc. 17), and a declaration with exhibits in support of the motion, (Doc. 18). On January 31, 2019, Plaintiff filed its opposition to Defendants' motion, (Doc. 22), and on February 21, 2019, Defendants filed their reply, (Doc. 28).

On February 7, 2019, Defendants filed a motion to appoint umpires under the Federal Arbitration Act, 9 U.S.C. § 5, to serve as neutral umpires in the demanded arbitrations, (Doc. 23), as well as a memorandum of law, (Doc. 24), and a declaration with exhibits in support of the

---

[3] In response to the first demand letter TIG asserted that it reserved "all rights in connection with this matter, including, without limitation, the right to object to any relief requested in the arbitration by AIG which exceeds the authority of the arbitration panel under the reinsurance agreement or otherwise." (Decl. Ex. F.)

3

motion, (Doc. 25). Defendants subsequently withdrew that motion on March 19, 2019. (Doc. 33).

## III. <u>Legal Standard</u>

In deciding motions to stay or compel arbitration, "courts apply a 'standard similar to that applicable for a motion for summary judgment.'" *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016) (quoting *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003)); *see also Lakah v. UBS AG*, 996 F. Supp. 2d 250, 255 (S.D.N.Y. 2014) (applying *Bensadoun*, *supra*, to motion to stay arbitration). Therefore, courts "consider all relevant, admissible evidence submitted by the parties" and "draw all reasonable inferences in favor of the non-moving party." *Nicosia*, 834 F.3d at 229 (citations omitted).

The Federal Arbitration Act ("FAA") , 9 U.S.C. § 1 *et seq.*, provides that an arbitration provision in a "contract evidencing a transaction involving commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. In creating "a body of federal substantive law of arbitrability, applicable to any arbitration agreement within [its] coverage," the FAA was "a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983); *see also AT & T Mobility LLC v. Concepcion*, 563 U.S. 333, 346 (2011) ("[O]ur cases place it beyond dispute that the FAA was designed to promote arbitration. They have repeatedly described the Act as 'embod[ying] [a] national policy favoring arbitration,' . . . ." (second and third alterations in original) (quoting *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006))). The "principal purpose of the FAA is to ensure that private arbitration agreements are enforced according to their

terms.'" *Concepcion*, 563 U.S. at 344 (internal quotation marks omitted). Notwithstanding the strong policy in favor of arbitration agreements, "'a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" *In re Am. Express Fin. Advisors Sec. Litig.*, 672 F.3d 113, 127 (2d Cir. 2011) (quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002)); *see also Concepcion*, 563 U.S. at 339 ("[C]ourts must place arbitration agreements on an equal footing with other contracts, and enforce them according to their terms.") (internal citations omitted).

In determining whether claims are subject to arbitration, courts in this Circuit consider "(1) whether the parties have entered into a valid agreement to arbitrate, and if so, (2) whether the dispute at issue comes within the scope of the arbitration agreement." *Am. Express Fin. Advisors*, 672 F.3d at 128. If these two conditions are met, the FAA "mandates that district courts *shall* direct the parties to proceed to arbitration." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985). When determining whether the parties have entered into a valid agreement to arbitrate, "courts should apply ordinary state-law principles that govern the formation of contracts," and evaluate the allegations "to determine whether they raise a genuine issue of material fact." *Sacchi v. Verizon Online LLC*, No. 14-cv-423-RA, 2015 WL 765940, at *4 (S.D.N.Y. Feb. 23, 2015) (internal quotation marks and citations omitted).

"The question whether the parties have submitted a particular dispute to arbitration, *i.e.*, the *question of arbitrability*, is an issue for judicial determination unless the parties clearly and unmistakably provide otherwise." *Schneider v. Kingdom of Thailand*, 688 F.3d 68, 71 (2d Cir. 2012) (quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002)). "[B]efore an agreement to arbitrate can be enforced, the district court must first determine whether such agreement exists between the parties." *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 73 (2d Cir.

5

2017); *see also Schneider*, 688 F.3d at 71 (noting that there must exist "clear and unmistakable evidence that the parties agreed to arbitrate"). "[A]ny silence or ambiguity about whether [an issue] is arbitrable reverses the usual presumption that issues should be resolved in favor of arbitration." *U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co.*, 241 F.3d 135, 147 (2d Cir. 2001). In cases where a party disputes that it is bound to an arbitration agreement, "the issue of arbitrability is for the Court in the first instance." *Di Martino v. Dooley*, No. 8 Civ. 4606(DC), 2009 WL 27438, at *4 (S.D.N.Y. Jan. 6, 2009); *see also Sarhank Grp. v. Oracle Corp.*, 404 F.3d 657, 661 (2d Cir. 2005) ("[A]rbitrability is not arbitrable in the absence of the parties' agreement.").

## IV. Discussion

### A. *Agreement to Arbitrate*

The parties do not dispute that the arbitration clauses created valid agreements to arbitrate. Therefore, I find that the arbitration clauses contained in the treaties create valid agreements to arbitrate.

### B. *Arbitrability*

The parties disagree about whether the disputes at issue come within the scope of the arbitration clauses. Defendants assert that the "controversy between American Home, New Hampshire, and [TIG] is clearly arbitrable," and argue that I "should stay this case and compel arbitration." (Defs.' Mem. 1.) Plaintiff responds that because Granite State is not a party to the Treaties and because in order for NHIC "to demand arbitration under the Treaties, it must establish that the subject matter of the putative arbitration falls within [two specific categories of business]," the claims at issue are not arbitrable. (*See* Pl.'s Mem. 9–10.)[4] Plaintiff is wrong.

---

[4] "Pl.'s Mem." refers to TIG Insurance Company's Memorandum of Law in Opposition to Defendants' Motion to

6

The arbitration clauses are broad enough to encompass the disputes at issue, and the arguments raised by Plaintiff relate to the interpretation of the underlying contracts and must await arbitration.

The arbitration clauses in the Treaties are quite broad, requiring the parties to submit "[a]ll disputes or differences arising out of" the Treaties to arbitration. If an arbitration agreement is broad, "there is a presumption that the claims are arbitrable." *Collins & Aikman Products Co. v. Building Systems, Inc.,* 58 F.3d 16, 20 (2d Cir. 1995). The language "[a]ll disputes or differences arising out of this Agreement shall be submitted to" arbitration is by definition a broad arbitration clause. *See id; see also Ace Capital Re Overseas Ltd. v. Central United Life Ins. Co.*, 307 F.3d 24, 33–34 (2d Cir. 2002) (finding that the phrase "any dispute" indicates a broad arbitration provision.). Accordingly, there is a presumption that the parties have agreed to submit all disputes to arbitration, including the present disputes.

The question that Plaintiff asks me to resolve, whether NHIC's claims made in Defendants' arbitration demands are covered by the Treaties, is one of contract interpretation, not of arbitrability. NHIC and American Home demanded arbitration with TIG due to TIG's alleged failure to pay amounts due under the Treaties. (Decl. Exs. C, D, E). Plaintiff does not argue that failure to pay amounts under the treaties is not arbitrable and covered by the arbitration clauses in the Treaties. It is a separate question whether NHIC is correct, and whether TIG must indeed make those payments is purely a question of contract interpretation, which, according to the broad arbitration agreement, is a question for the arbitrator. *Nation Union Fire Insurance Company of Pittsburgh v. Belco Petroleum Corp.*, 88 F.3d 129, 135 (2d Cir. 1996) (holding that when the contract contains an arbitration clause, it is a question for the arbitrator as

---

Compel Arbitration and to Dismiss, filed on January 31, 2019. (Doc. 22.)

to "whether a specific merit-related dispute is arbitrable," and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration"); *Cook Chocolate Co., a Division of World's Finest Chocolate v. Salomon, Inc.*, 684 F. Supp. 1177, 1183 (S.D.N.Y. 1988) ("Whether an arbitration provision in a contract encompasses a particular dispute is a question of contract interpretation, but the strong federal policy favoring arbitration requires that any ambiguities in the interpretation of a contractual arbitration provision be resolved in favor of arbitration." (internal citation omitted)).

Plaintiff's argument that the question of whether NHIC's policies issued by Granite State fall under the Treaties raises an issue of arbitrability is incorrect. The Treaties at issue, under which Plaintiff brings this suit, are between NHIC and TIG (among other AIG affiliate companies). NHIC made a demand of TIG for arbitration under the Treaties. Whether NHIC will prevail on its demands for payment under the Treaties is based on the interpretation of the contract. It may well be that the arbitrators will find that NHIC's demands fall outside the scope of the Treaties based on the terms of the agreement. However, the question of whether these NHIC policies fall under the Treaties is one of contract interpretation for the arbitrator to decide.[5] If I were to decide each of the contract interpretations raised by Plaintiff there would be nothing or very little for an arbitration panel to do if I decided arbitration was warranted.

Plaintiff also argues that the question of whether Granite State is bound to arbitration by the Treaties is a question of arbitrability that requires this Court's determination. It is true that "a court should be wary of imposing a contractual obligation to arbitrate on a non-contracting party." *Smith/Enron Cogeneration Ltd. P'ship, Inc. v. Smith Cogeneration Int'l, Inc*., 198 F.3d

---

[5] I also note that Plaintiff does not dispute whether American Home's claims fall under the Treaties and are subject to arbitration.

88, 97 (2d Cir. 1999). However, I need not address whether Granite State is subject to the arbitration, as the arbitration demand, made in accordance with the Treaties, is between NHIC and TIG, not Granite State. TIG's concern over whether Granite State would have any right under the Treaties to seek arbitration is misplaced, as Granite State has not made any demand for payment, nor was Granite State a party to any of the demands for arbitration made by NHIC. TIG's argument that Granite State issued the policies, and therefore the request from NHIC for payment falls outside the scope of the Treaties, is a contractual one that TIG can make to the arbitrators. It does not, however, mandate my intervention or assessment of whether arbitration should be imposed upon Granite State.

However, rather than grant Defendants' motion to dismiss the case as against Granite State, I will instead stay the action pending the completion of arbitration. The Second Circuit has made clear that staying—as opposed to dismissing—an action in which all claims have been referred to arbitration is the proper course. *See Katz v. Cellco P'ship*, 794 F.3d 341, 346–47 (2d Cir. 2015) (reversing district court's dismissal of action in which all claims had been referred to arbitration and explaining that "the text, structure, and underlying policy of the FAA mandate a stay of proceedings");[6] *see also Porcelli v. JetSmarter, Inc.*, 19 Civ. 2537 (PAE), 2019 WL 2371896, at *4 (S.D.N.Y. June 5, 2019) (staying matter pending arbitration); *Davimos v. JetSmarter, Inc.*, Civil Action No. 18-15144 (MAS) (DEA) 2019 WL 3082643, at *5 (D.NJ. July 15, 2019) (declining defendants' invitation to dismiss the action and instead staying case pending arbitration). I will therefore stay, rather than dismiss, the action pending arbitration.

---

[6] Although the defendant in *Katz*—unlike Defendants here—requested that the case be stayed pending arbitration, 794 F.3d at 343, Defendants make no attempt to distinguish *Katz* on that ground and, indeed, offer no compelling rationale for dismissing the proceedings as opposed to ordering a stay. (*See* Defs.' Mem. 9 n.1 (citing a pre-*Katz* district court opinion, *Germosen v. ABM Indus. Corp.*, No. 13-cv-1978 (ER), 2014 WL 4211347, at *26 (S.D.N.Y. Aug. 26, 2014), for the proposition that I "ha[ve] the discretion to dismiss this action if all the issues raised are arbitrable").)

### C. *Attorneys' Fees*

Defendants are not entitled to attorneys' fees. A defendant is entitled to attorneys' fees when a plaintiff's claim is brought in "bad faith," or when it "is entirely without color and has been asserted wantonly, for purposes of harassment or delay, or for other improper reasons." *Browning Debenture Holders' Committee v. DASA Corp.*, 560 F.2d 1078, 1088 (2d. Cir 1977). In the context of a motion to compel arbitration, "courts have awarded attorneys' fees where the party refusing arbitration acted without justification or did not have a reasonable chance to prevail." *Amaprop Ltd. v. Indiabulls Fin. Servs. Ltd.*, No. 10 Civ. 1853(PGG), 2011 WL 1002439, at *3 (S.D.N.Y March 16, 2011) (internal quotation marks omitted). That is not the case here. Plaintiff's suit was brought in good faith, and was clearly not brought for the purposes of harassment or delay. Although Plaintiff did not prevail, there is no support for the notion that Plaintiff refused arbitration without justification or without a reasonable chance to prevail. In fact, Plaintiff points out that in its response to Defendants' demand to arbitrate it reserved its right to challenge the arbitrability of Defendants' claims.

### V. Conclusion

Accordingly, Defendant's motion to compel arbitration is GRANTED and its motion to dismiss the complaint and Defendant's request for attorneys' fees is DENIED.

The Clerk's Office is respectfully directed to terminate the motion at Document 16 and stay the case as it relates to Granite State.

SO ORDERED.

Dated: February 7, 2020
    New York, New York

Vernon S. Broderick
United States District Judge